## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYLER LIVINGSTON and DONALD VEACH, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| AVIS BUDGET GROUP, INC., AVIS RENT A CAR SYSTEM, LLC, and BUDGET RENT A CAR SYSTEM, INC., | |
| Defendants. | |

Plaintiffs Tyler Livingston and Donald Veach, individually and on behalf of all others similarly situated, bring this Complaint against Avis Budget Group, Inc. ("Avis/Budget"), Avis Rent a Car System, LLC ("Avis"), and Budget Rent a Car System, Inc. ("Budget") (collectively "Avis/Budget" or "Defendants"). Plaintiffs allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief:

### INTRODUCTION

1.      This is a class action lawsuit brought on behalf of all consumers who rented vehicles from Defendants and paid an improper and automatically imposed fuel service charge when using the Self-Service fuel option.

2.      Consumers' reservations to rent cars from Defendants using Defendants' website or app, or by calling or making an in-person reservation. When making a reservation, consumers are required to select a fuel plan. Defendants provide three options for fuel. The first is a "Fuel Service Option" which requires the consumer to pay in advance for a full tank of gas. The second

1

is "Self-Service (or Self-Refueling) (hereafter "Self-Service")," which purportedly allows consumers to avoid paying fuel service charges by requiring the consumers to fill the vehicle's fuel tank before returning the vehicle to Defendants. The third is "EZFuel," which allows consumers who drive fewer than 75 miles to pay a flat fee for fuel and return the car without stopping to refuel when returning it.

3.     Defendants levy fuel service charges when the rental vehicle is returned to Defendants with less fuel than was in it when they received the vehicle, and the service charge is charged at a per-mile or per-gallon rate.

4.     Consumers who select the Self-Service option and return their vehicle with a full tank of fuel, however, are still charged fuel service charges by Defendants. Despite their acknowledgment of the full fuel tank on customers' receipts, and the customers' selection of the Self-Service fuel option, Defendants still improperly impose a fuel service charge.

5.     As a result, consumers who utilize the Self-Service option are ultimately forced to pay for fuel twice. First, they pay to fill the rental vehicle with fuel before dropping it off, as required by the Self-Service fuel option. Second, they are required to pay the fuel service charge after they return the vehicle.

6.     Plaintiffs bring this action on behalf of themselves and a class of all persons who enrolled in the Self-Service fuel option and paid a fuel service charge to recover amounts paid to Defendants and to demand Defendants cease improperly collecting fuel service charges to which they are not entitled.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members,

(ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this district, Defendants have advertised in this district, and Defendants have received substantial revenue and profits from their leasing of rental vehicles in this district.

9.      This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed rental vehicles into the stream of commerce within the state of New Jersey and throughout the United States. Defendants also maintain their corporate headquarters in this district.

**THE PARTIES**

**Plaintiff Tyler Livingston**

10.      Plaintiff Tyler Livingston is a citizen of Arizona and currently resides Tempe, Arizona, and has at all times pertinent to this Complaint.

11.      Plaintiff Livingston regularly rents vehicles from Defendants.

12.      Plaintiff Livingston uses Defendants' website and mobile application to make reservations.

13.      During the reservation process, Avis advertised three fuel service plan options to Plaintiff Livingston: (1) Fuel Service Option, (2) Self-Service, and (3) EZFuel.

14.      On May 1, 2023, Plaintiff Livingston rented a vehicle from Avis's Albuquerque

International Airport location. Plaintiff Livingston selected the Self-Service fuel option.

15.     On May 12, 2023, Plaintiff Livingston returned the vehicle. Prior to returning the vehicle, Plaintiff Livingston filled up the fuel tank at a nearby gas station, in compliance with his obligations under the Self-Service fuel option. When Plaintiff Livingston returned the vehicle, the fuel tank was full.

16.     Avis informed Plaintiff Livingston that a receipt for his rental would be emailed at a later unspecified time. An Avis customer service representative verbally confirmed that Plaintiff Livingston returned the vehicle with a full tank. On the receipt Avis provided to Plaintiff Livingston, however, the fuel reading at the time of return incorrectly stated 7 out of 8 gallons. The receipt is incorrect, as Plaintiff Livingston filled up the fuel tank approximately one mile away from Avis' return location and returned the vehicle immediately after.

17.     Despite Avis' verbal acknowledgment that Plaintiff Livingston returned the vehicle with a full tank of fuel, Avis still charged Plaintiff Livingston a fuel service charge. Avis charged Plaintiff Livingston $12.16 for "Fuel Service."

18.     As a result, Plaintiff Livingston was forced to pay for fuel twice: first, when he filled up the tank at a local gas station, and second, when Avis charged him a fuel service charge in the amount of $12.16.

19.     On June 5, 2023, Plaintiff Livingston rented another vehicle from Avis's Albuquerque International Airport location. Plaintiff Livingston selected the Self-Service fuel option.

20.     On June 16, 2023, Plaintiff Livingston returned the vehicle. Prior to returning the vehicle, Plaintiff Livingston filled up the fuel tank at a nearby gas station, in compliance with his obligations under the Self-Service fuel option. When Plaintiff Livingston returned the vehicle, the

fuel tank was full.

21.    An Avis customer service representative verbally confirmed that Plaintiff Livingston returned the vehicle with a full tank.

22.    Avis informed Plaintiff Livingston that a receipt for his rental would be emailed at a later unspecified time. On the receipt Avis provided to Plaintiff Livingston, however, the fuel reading at the time of return incorrectly stated 21.5 out of 22 gallons. The receipt is incorrect, as Plaintiff Livingston filled up the fuel tank approximately one mile away from Avis' return location and returned the vehicle immediately after.

23.    Despite Avis' verbal acknowledgment that Plaintiff Livingston returned the vehicle with a full tank of fuel, Avis still charged Plaintiff Livingston a fuel service charge. Avis charged Plaintiff Livingston $3.12 for "Fuel Service."

24.    As a result, Plaintiff Livingston was forced to pay for fuel twice: first, when he filled up the tank at a local gas station, and second, when Avis charged him a fuel service charge in the amount of $3.12.

25.    As a direct and proximate result of Defendants' conduct, Plaintiff Livingston has been harmed.

**Plaintiff Donald Veach**

26.    Plaintiff Donald Veach is a citizen of Washington and currently resides Vancouver, Washington, and has at all times pertinent to this Complaint.

27.    Plaintiff Veach uses Defendants' website and mobile application to make reservations.

28.    During the reservation process, Budget advertised three fuel service plan options to

Plaintiff Veach: (1) Fuel Service Option, (2) Self-Service, and (3) EZFuel.

29.     On January 17, 2024, Plaintiff Veach rented a vehicle from Budget. Plaintiff Veach selected the Self-Service fuel option.

30.     Plaintiff Veach returned the vehicle. Prior to returning the vehicle, Plaintiff Veach filled up the fuel tank at a nearby gas station, in compliance with his obligations under the Self-Service fuel option. When Plaintiff Veach returned the vehicle, the fuel tank was full.

31.     Budget provided Plaintiff Veach with a receipt for his rental. The fuel reading on the receipt shows 14.5 out of 14.5 gallons.

32.     Despite Budget's acknowledgment that Plaintiff Veach returned the vehicle with a full tank of fuel, as indicated on the receipt below, Budget still charged Plaintiff Veach $15.99 for "Fuel Service."

**RECEIPT**

**Your Vehicle Information**

| | |
|---|---|
| Vehicle Number: | 50027165 |
| Vehicle Group Rented: | Intermediate SUV |
| Vehicle Group Charged: | Intermediate |
| Vehicle Description: | SIL TOYOTA RAV4 2WD |
| License Plate Number: | FL9573AY |
| Odometer Out: | 52384 |
| Odometer In: | 52439 |
| Total Driven: | 55 |
| Fuel Reading: | Out 14.5 Gall In 14.5 Gal |

**Your Taxable Fees**

| | |
|---|---|
| 11.11% Concession Recovery Fee | 8.97 |
| Fuel Service | 15.99 |
| CUSTOMER FACILITY CHG 4.50/R | 4.50 |
| ENERGY RECOVERY FEE 0.60/DY | .60 |

33.     As a result, Plaintiff Veach was forced to pay for fuel twice: first, when he filled up the tank at a local gas station, and second, when Budget charged him a fuel service charge in the

amount of $15.99.

34.    As a direct and proximate result of Defendants' conduct, Plaintiff Veach has been harmed.

**Defendants**

35.    Defendant Avis Budget Group, Inc. ("Avis/Budget") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 6 Sylvan Way, Parsippany, New Jersey. Avis/Budget is registered with the State of New Jersey and is authorized to conduct business in the State of New Jersey. Avis/Budget also maintains car rental offices throughout New Jersey and the United States.

36.    Defendant Avis Rent A Car System, LLC ("Avis") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in New Jersey. Upon information and belief, Avis/Budget is the sole member of Avis. Avis is registered with the State of New Jersey and is authorized to conduct business in the State of New Jersey. Avis also maintains car rental offices throughout New Jersey and the United States.

37.    Defendant Budget Rent A Car System, Inc. ("Budget") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in New Jersey. Budget is a wholly-owned subsidiary of Avis/Budget. Budget is registered with the State of New Jersey and is authorized to conduct business in the State of New Jersey. Avis also maintains car rental offices throughout New Jersey and the United States.

38.    Upon information and belief, Avis/Budget, Avis, and Budget share the same operational and administrative infrastructure.[1]

---

[1] *Avis Budget Group 2023 Annual Report*, https://ir.avisbudgetgroup.com/static-files/d5053ce6-9b98-4178-8255-ee1d56a0a659, at 6 (last visited April 11, 2024).

39.     At all times material hereto, Defendants acted in concert with one another such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

40.     Upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each other, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each other. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each Defendant.

## **FACTUAL ALLEGATIONS**

### **A. Defendants' Car Rental Business**

41.     Defendants are car rental companies that operate throughout the United States. Defendants own fleets of vehicles and consumers pay Defendants a fee to rent them for certain time periods and then return them at the end of the rental period.

42.     Defendants advertise, market, and promote various fuel service plans in order to pass the cost of fuel from Defendants to the consumers renting their vehicles.

43.     Consumers typically make reservations for rental vehicles by one of three ways: (1) online on Defendants' websites;[2] (2) on Defendants' mobile applications;[3] or (3) by calling or visiting a physical rental location.

44.     Regardless of how consumers make a reservation, Defendants advertise three fuel plans.[4] The first is the "Fuel Service Option" which requires the consumer to pay in advance for a

---

[2] https://www.avis.com/en/reservation/make-reservation (last visited April 12, 2024); https://www.budget.com/en/reservation/make-reservation (last visited April 12, 2014)
[3] The mobile applications replicate the websites.
[4] *See* https://www.avis.com/en/offers/us-offers/fuel-plans (last visited April 12, 2024); https://www.avis.com/en/customer-service/faqs/usa/equipment-requirements (last visited April

full tank of gas at an undisclosed market rate. The second is "Self-Service (or Self-Refueling)," which purportedly allows consumers to avoid paying fuel service charges altogether by requiring the consumers to fill the vehicle's fuel tank before returning the vehicle to Defendants. The third is "EZFuel," which allows consumers who drive fewer than 75 miles to pay a flat fee for fuel and return the car without stopping to refuel when dropping it back off.

45.    Defendants promote the fuel plan options, including the Self-Service option, as easy and convenient.[5]

46.    Defendants explain the Self-Service fuel plan option on their websites. Avis's website reads: "Purchase fuel just prior to returning and return the car to Avis with a full tank of

---

12, 2024); https://www.avis.com/en/reservation#/review-and-book (last visited April 12, 2024); https://www.budget.com/en/offers/us-offers/fuel-plans (last visited April 12, 2024); https://www.budget.com/en/customer-care/faqs/global/glossary (last visited April 12, 2024); https://www.budget.com/en/reservation#/review-and-book (last visited April 12, 2024).
[5] *See id.*

gas. If you choose this option, **Avis will not charge you for fuel**."[6]



47.    Budget describes the option similarly: "If you aren't sure how far you'll be driving, but plan to stop for gas, don't accept the Fuel Service Option. Simply bring the car back full, provide a receipt for your gas purchase, **and you'll avoid any refueling service charge**."[7]

---

[6] https://www.avis.com/en/customer-service/faqs/usa/equipment-requirements (last visited April 12, 2024) (emphasis added).
[7] https://www.budget.com/en/offers/us-offers/fuel-plans (last visited April 12, 2014) (emphasis added).

 

**Self Refueling**

If you aren't sure how far you'll be driving, but plan to stop for gas, don't accept the Fuel Service Option. Simply bring the car back full, provide a receipt for your gas purchase, and you'll avoid any refueling service charge.

**Refueling Service**

Refueling Service is the ultimate convenience because you simply return the car with less fuel in the tank than when you picked it up, and pay a service charge for the fuel used. We'll do the rest!

48.     In their frequently asked questions, Defendants explain that they 'charge so much' for fuel service charges "to strongly motivate customers to save by refueling the car themselves."[8] In other words, Defendants advertise and promote the Self-Service fuel option over the other fuel options available.

49.     Defendants' purported interest in consumers self-refueling their rental vehicles is undercut by the fact that Defendants only allow consumers to select the Self-Service option when making reservations in person at the rental counter.

50.     Although Defendants advertise three fuel plan options, Defendants only make the first (the Fuel Service Option) and most costly option available for selection during the online reservation process. Defendants note that the Self-Service and EZFuel options may be requested

---

[8] https://www.budget.com/en/customer-care/faqs/global/car-rates (last visited April 15, 2024).

when consumers pick up their rental vehicles.

51.    Consumers who select the Self-Service option and return their vehicle with a full tank of fuel, however, are still charged fuel service charges by Defendants.

52.    Despite their acknowledgment of the full fuel tank on consumers' receipts, and the consumers' selection of the Self-Service fuel plan option, Defendants still improperly impose a fuel service charge and receive the benefit of the customer filling up the fuel tank on Defendants' vehicles. Defendants are then able to pocket the fuel service charge, which represents 100% profit to Defendants because the fuel tank is already full.

**B.  Defendants Mislead and Improperly Charge Consumers Fuel Service Charges**

53.    Defendants tout their Self-Service (or Self Refueling) option as a way to avoid a fuel service charge.[9]

54.    Consumers, including Plaintiffs, relied on Defendants' advertisements regarding the fuel service plan options, which stated if they opted for the Self-Service option and returned the rental vehicle with a full tank of fuel they would not incur a fuel service charge.

55.    Despite Defendants' assurances and advertisements, consumers, including Plaintiffs, who selected and complied with the Self-Service option are still required to pay fuel service charges.

56.    Defendants further mislead and conceal the fuel service charges by failing to provide consumers with a printed receipt upon return. Instead, Defendants inform consumers that they will receive a receipt via their email or mobile application at a later, unspecified time.

57.    As a result, it is incumbent upon consumers to search for their receipts and contact Defendants if there are any errors in the receipt, such as the fuel service charge. Because the vehicle

---

[9] *See* supra notes 6-7.

is already returned, customers are deprived of the evidence needed to successfully dispute the full service charge.

58.    Defendants' practice of delaying providing consumers with receipts that show the fuel service charges distances Defendants from consumers and reduce the likelihood that consumers will challenge, let alone even notice, the improper fuel service charge.

59.    Plaintiffs' experiences are not unique or isolated occurrences. Indeed, numerous consumers have complained online about being charged fuel service charges despite filling up the tank before returning it to Defendants.

60.     Several consumers submitted complaints to the Better Business Bureau. The following is a mere sampling of the complaints:[10]

    a.   A consumer wrote on March 14, 2024: "Original issue was a fuel surcharge that was added to my bill, after declining this service at pickup AND informing the drop-off attendant that I had declined the fuel service and the car was full. Receipt reflected this full tank, receipts and pictures taken, yet the charge was present. This was remedied by a call to customer service, but I will not call back for this new issue due to treatment during the call... When my receipt was reissued with the fuel charge removed, every other daily charge was raised to reach the originally charged amount."[11]

    b.   A consumer wrote on March 6, 2024: "Rented a car from Miami and drove it to ******* same day. The car was picked up at 3/4 full. Returned the car full and provided receipt in the car as stated by the documents. I was charge a ***** fuel surcharge. The charge states :- I drove 5236 miles in that span of 7 hours -The car Is white though pictures provided show a gray car was rented -The car was provided with 8/8 fuel and taken in with 3/8 (when the car was picked up with 3/4 recorded on documents)."[12]

    c.   A consumer wrote on February 27, 2024: "I returned a vehicle today and was charged fuel surcharge even though I returned with more fuel than the vehicle had. It was not full when we got it, it was dirty and obviously had not been attended to. I would like my money back. I have added a picture of the fuel amount when we picked up, and a fuel amount when we dropped off that shows we did not return with less gas than received."[13]

    d.   A consumer wrote on February 12, 2024: "I encountered a series of issues with a rental from Budget's ************, ***. location from Feb 3rd to Feb 7th, ****, the return location being ******, *******. My rental agreement number is 673128374.Despite returning the car with a full tank of gas, I was erroneously charged $55.87 for fuel. At the time of drop-off at the ***************** airport, I requested a receipt, but the attendant refused and assured me it would be emailed. This absence of immediate documentation prevented me from disputing the fuel charge on the spot.Upon reviewing the emailed receipt at home, I had to contact Budget to address the incorrect charge. I was told to wait 48 hours before they could amend the receipt, necessitating another call from my end. When I called back, the representative acknowledged that I should not have been charged for gas, as their records confirmed that the car was returned with a full tank. The rep's inability to explain why I was charged lead me to believe that this may be an intentional act rather than an isolated mistake."[14]

---

[10] The following complaints are reproduced as they appear online. Any typographical errors are attributable to the original author.

e.  A consumer wrote on February 8, 2024: "I was told the car rental would be $230.58. Then after returning it, they charged me ******. The car returned with full gas and there should be no increase. I believe the increased it on purpose and that they do that all the time. It is criminal.I expect a refund of at least $47.40. But feel like it should be more because they are con artists and should pay for their transgression."[15]

f.  A consumer wrote on February 1, 2024: "Jan 11th to Jan 14th 2023 I picked up a vehicle from Avis at ******************** in the evening. They didn't have the car I reserved so gave me a large suv gas guzzler. I noticed the gas gauge was only 1/2 full and asked them before I left the garage. They signed a paper and told me to take a pic of the mileage and gas gauge which I did. The vehicle was filthy and didnt have any windshield wiper fluid and I could hardly see out of the dirty windshield. They charged for gas even though I returned it with more than they had in it. And Avis double charged me. They charged my rental fee two times to my account on Jan 11th, two seperate charges for the same amount $217.90 2x."[16]

---

[11] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=4 (last visited April 15, 2024).

[12] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=7 (last visited April 15, 2024).

[13] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=8 (last visited April 15, 2024).

[14] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=12 (last visited April 15, 2024)

[15] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=13 (last visited April 15, 2024)

[16] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=16 (last visited April 17, 2024)

g.  A consumer wrote on January 11, 2024: "I rented a car from this Avis Location on January 6, 2023 and returned it on January 7, 2023. I took care to return the vehicle with a full tank of gas. This was noted on my receipt as well. However, I was still given a $15 fuel service charge despite the vehicle being returned with a full tank.The return process, unlike at other rental locations, does not involve an employee checking the car in front of you before giving you a final receipt. At This location, they have you drop the keys off and email you your receipt an hour later. This is a blatant way to add bogus charges such as the one levied to me without the customer being present to dispute them. I understand that $15 may not seem like a lot, but I am disgusted with the way that this business conducts itself by plainly skimming money from its customers and I hope people see this and reconsider renting from this Avis location."[17]

h.  A consumer wrote on January 25, 2024: "On Saturday, January 06, **** we picked up our rental care from Avis at the ****************. We rented it for one week. I paid the vehicle rental months prior because it was cheaper. Once we took the vehicle out, we noticed that the tires on the vehicle were chunking and shredded. We return the vehicle the same day and exchanged it for another. I inspected the new vehicle and noticed that the fuel was only filled half tank. I went back to the kiosk to notify the customer service rep and he said that since it was really busy, they had no time to fill the tank completely. He said he would make a note on my account and to return the vehicle as I received it. I returned the vehicle on January 13, **** with half a tank full of fuel as the rep told me. The company then proceeded to charge my card an additional $96 for fuel. I called to talk to a supervisor, non was available. The customer service rep told that the charge was because I didn't return the vehicle with full tank of fuel. I tried to explain to him what had happened to no avail. I have been waiting to speak to supervisor, but have not received a call back."[18]

i.  A consumer wrote on January 5, 2024: "I was charged $41.25 for fuel service when the vehicle was returned with a full tank of gas (can provide bank statement if requested) and receipt was in the car."[19]

j.  A consumer wrote on January 2, 2024: "Dear Better Business Bureau,I am writing to file a formal complaint against AVIS Car Rental for unfair charges. My name is **********************, and I rented a vehicle from AVIS on Dec 26th to Dec 29th. The Avis Rental Agreement is ********* The original agreement was for $444.53, but upon returning the vehicle, I was charged an additional $191.79. This includes a questionable fuel charge and an excessive late return fee.1.Excessive Fuel Charge: Although I refueled the car myself for $42.42 for 11.28G, please see the attached receipt. AVIS Car Rental billed me an additional $76 for 9.79G fuel. This charge is perplexing and excessive. The significant discrepancy between the actual refueling cost and AVISs charge is unreasonable and suggests an unfair pricing practice."[20]

k.  A consumer wrote on May 9, 2023: "I rented a car through the wizard program avis Newington CT was the closest and I prepaid for my rental the weekend of 05/05/23 05/07/23 and was charged $121.19 i agree with this amount. when i returned the car on 05/07/23 per the contract. Then i was told i would be charged an additional $123.75 not on the original contract and a refueling charge of $17.99 not on the contract either i returned the car full. i have the gas receipts to prove that too. rental agreement #*********. when i told the lady that i was charged twice she said "i can charge you what i want" and really didnt care.i attempted to call there customer service they hung up on me after waiting on hold for 20 min. i have used Avis in the past and have never heard such a thing. and have never been double charged. this should be criminal and there is a reason why this place only has 1.8 stars on google review. i will never use them again if this cant be resolved. i am i total disbelief."[21]

---

[17] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=23 (last visited April 17, 2024)

[18] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=17 (last visited April 15, 2024)

[19] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=24 (last visited April 17, 2024)

[20] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=26 (last visited April 17, 2024)

[21] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=33 (last visited April 17, 2024)

l. A consumer wrote on November 2, 2022: "Back in Feb. 27th, our flight to Salt Lake from LAX was cancelled so we had to rent a car from Avis (Avis confirmation # XXXXXXXXUS3) to drive back to Salt Lake. When we returned the car early in the morning of the Feb. 28th, we verified with the attendant the fuel level was full as well as the rental car-seat was there. We did this to ensure no mistake was made. Unfortunately, for whatever reason, Avis charged me an additional $140 for the fuel which I was able to dispute with my Credit card company. However, in around August time frame, we received a phone call from their collection agent and asking for the payment. We discussed the charge and we told her we are more than happy to provide the gas station receipts to show it would be impossible for the fuel tank to be emptied when it was returned (gas station transactions from LA to Salt Lake as well as the top-off refilled 15 minutes before the physical car returned ~ 5:30 a.m. Feb. 28th @ the Salt Lake Airport location). She is agreed it would not be possible and would drop the charge. Nevertheless, I was put on their "DO NOT RENT LIST" and the collection charge is still pending. I'm trying to resolve the issue with them but so far not much luck.I'm sure this is not the first case where a mistake happened in recording the fuel level and a "fuel charge" occurs. It would be nice if we can get your help in resolving this issue as well as bringing up this dilemma for all the car-rental people. Your help on this is greatly appreciated. Thanks."[22]

61. Consumers also wrote on various online forums and websites to complain of Defendants' misconduct. Below are only a few of the complaints online.

a. A consumer rented a vehicle from Budget. He filled the tank before returning the vehicle, but later discovered that Budget charged him a $49 fuel service charge.[23]

b. A consumer reported that he rented a vehicle from Avis. His receipt noted a $18.99 fuel service charge, despite the same receipt's fuel reading showing a full tank.[24]

c. A consumer wrote that he rented a vehicle from Avis. Avis charged him $17 for fuel service, despite the receipt's fuel reading showing a full fuel tank.[25]

62. Defendants have been scrutinized for their fuel service charge practices in the past.

---

[22] https://www.bbb.org/us/ok/tulsa/profile/auto-renting-and-leasing/avis-1025-38004414/complaints?page=41 (last visited April 17, 2024)

[23] https://www.usatoday.com/story/travel/advice/2015/07/12/hertz-rental-car-express-fuel/29954649/ (last visited April 15, 2024)

[24] https://thepointsguy.com/news/rental-car-charges/ (last visited April 15, 2024)

In 2007, the Federal Trade Commission ("FTC") charged Budget with violations of federal law, alleging it engaged in deception when it advertised and marketed its fuel fee program.[26] According to the FTC, Budget deceptively claimed that consumers who returned their cars with a full tank of fuel would not be charged for fuel. However, the FTC alleged that Budget charged all customers a fuel charge and, only after customers returned their vehicle and presented a fuel receipt, would reverse the charge. The FTC alleged that Budget concealed the fuel charge from customers as well as failed to adequately inform customers about the process for having the fuel charge reversed. It found that Budget "made deceptive claims about returning cars with a full tank of gas on its Web site, point of sale disclosures, and rental contracts."

63.    While the FTC and Budget settled the FTC's allegations,[27] upon information and belief, Defendants continue to engage in deceptive and misleading conduct related to their imposition of fuel service charges related to the Self-Service fuel option. Indeed, Budget's fuel fee program from 2007 mirrors the fuel plan options and Self-Service options that are at issue in this case.

## CLASS ACTION ALLEGATIONS

64.    Plaintiffs bring this action on behalf of themselves, and on behalf of the following classes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed class is defined as follows:

**Nationwide Class:**
All persons that reside in the United States that rented a vehicle from Defendants and selected the Self-Service fuel plan option but were charged a fuel service charge

---

[25] https://www.tripadvisor.com/ShowTopic-g32655-i61-k11669557-Avis_fuel_charge_at_LAX-Los_Angeles_California.html (last visited April 15, 2024)

[26] *See* https://www.ftc.gov/news-events/news/press-releases/2007/11/budget-rent-car-settles-ftc-charges-fuel-fees-levied-customers-who-returned-rental-cars-full-tank; https://www.ftc.gov/sites/default/files/documents/cases/2007/11/071120complaint.pdf

[27] https://www.ftc.gov/sites/default/files/documents/cases/2007/11/071120agreement.pdf

despite returning the vehicle with a full tank of fuel.

**Arizona Subclass:**
All persons that reside in Arizona that rented a vehicle from Defendants and selected the Self-Service fuel plan option but were charged a fuel service charge despite returning the vehicle with a full tank of fuel.

**Washington Subclass:**
All persons that reside in Washington that rented a vehicle from Defendants and selected the Self-Service fuel plan option but were charged a fuel service charge despite returning the vehicle with a full tank of fuel.

65.    Together, the Nationwide Class and the State Subclasses shall be collectively referred to herein as the "Class."

66.    Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions after conducting discovery.

67.    Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that thousands of consumers rented vehicles from Defendants and enrolled in the Self-Service fuel option throughout the United States, including within Arizona, Washington, and New Jersey.

68.    Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.    Whether Defendants engaged in the conduct alleged herein;

b.    Whether Defendants wrongfully imposed fuel service charges on consumers who

enrolled in, and complied with, the terms of the Self-Service fuel option;

c.   Whether Defendants breached their contracts with Plaintiffs and the Class;

d.   Whether Defendants were unjustly enriched by the collection of fuel service charges;

e.   Whether Defendants violated Arizona's Consumer Fraud Act;

f.   Whether Defendants violated Washington's Consumer Protection Act; and

g.   Whether class members are entitled to injunctive relief, actual and/or statutory damages for the aforementioned violations, and, if so, in what amount.

69.   <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class rented a vehicle from Defendants and selected the Self-Service fuel option. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

70.   <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel that are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

71.   <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual

litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' records.

72.    Injunctive Relief: Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT ("AFCA")
### (Ariz. Rev. Stat. §§ 44-1521 *et seq.*)
### (On Behalf of the Arizona Subclass)

73.    Plaintiffs and the Arizona Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

74.    Plaintiff Livingston brings this claim on behalf of himself and on behalf of the Arizona Subclass against Defendants.

75.    The AFCA states:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

Ariz. Rev. Stat. § 44-1522.

76.     Plaintiff Livingston and the Arizona Subclass Members are "persons" as defined by Ariz. Rev. Stat. § 44-1521(6).

77.     Defendants provide "services" as that term is included in the definition of "merchandise" under Ariz. Rev. Stat. § 44-1521(5), and Defendants are engaged in the "sale" of merchandise as defined by Ariz. Rev. Stat. § 44-1521(7).

78.     Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and concealment, suppression and omission of material facts in connection with the sale and advertisement of its rental vehicles, including:

a.  By Defendants' advertisement of the Self-Service fuel option without stating Defendants will collect the fuel service charge even if the customer fills the vehicle up with fuel before returning it;

b.  Failing to disclose the process by which Defendants impose fuel service charges;

c.  Failing to refund fuel service charges even though they knew or should have known that said charges were improper;

d.  Failing to take reasonable steps to adequately inform Plaintiffs and Arizona Subclass Members how they can avoid the imposition of fuel service charges; and

e.  Failing to take reasonable steps to develop and implement a process by which improper fuel service charges are not improperly imposed.

79.     The above unlawful, unfair, and deceptive acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Livingston and the Arizona Subclass Members that they could not reasonably avoid; this substantial injury is outweighed by any benefits to consumers or to competition.

80.     As rental vehicle companies, Defendants knew or should have known that their systems, policies, and practices related to fuel service charges were improper in that Plaintiff Livingston and Arizona Subclass Members were improperly charged fuel service charges despite returning their rental vehicles with a full tank of fuel. Defendants' actions in engaging in the above-identified deceptive acts and practices were negligent, knowing, willful, and/or wanton and reckless with respect to the rights of the Arizona Subclass Members.

81.     Defendants' acts or practices affect the public interest because there is a strong likelihood that additional consumers have been or will be injured in exactly the same fashion.

82.     Through their acts or practices, Defendants have collected millions of dollars in fuel service charges which should have been refunded to Plaintiff Livingston and the Arizona Subclass.

83.     Had Plaintiff Livingston and the Arizona Subclass members known about the fuel service charge, they would not have rented their vehicles from Defendants, would have selected a different fuel service plan, or would have paid less for the rental vehicles.

84.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff Livingston and the Arizona Subclass Members suffered an ascertainable loss of money or property, real or personal, as described above and were injured by Defendants' failure to refund the fuel service charges.

85.     Pursuant to Ariz. Rev. Stat. §§ 44-1521, Plaintiff Livingston and the Arizona Subclass are entitled to preliminary and permanent injunctive relief.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**

**(Wash. Rev. Code §§ 19.86.010 *et seq.*)**
**(On Behalf of the Washington Subclass)**

86.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

87.     Plaintiff Veach brings this claim individually and on behalf of the Washington Subclass.

88.     Plaintiff Veach and Washington Subclass members are "persons" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(1).

89.     Defendants are "persons" within the meaning of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010(1).

90.     Defendants conduct "trade" and "commerce" within the meaning of the WCPA, WRC § 19.86.010(2).

91.     Defendants' actions are unfair and/or deceptive within the meaning of the WCPA in that Defendants have engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Veach and the Washington Subclass members the true nature of the fuel service charges and the process by which Defendants charges fuel service charges to Plaintiff Veach and the Washington Subclass. Such false advertisements were material to Plaintiff Veach and the Washington Subclass members in their decision to rent vehicles from Defendants.

92.     Defendants' unfair or deceptive acts or practices have occurred in their trade or business, and Defendants were and are capable of deceiving a substantial portion of the public.

93.     The facts concealed or not disclosed by Defendants to Plaintiff Veach and the Washington Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to rent vehicles from Defendants or fill up the fuel tank

before returning the vehicle to Defendants. Had Plaintiff Veach and the Washington Subclass members known about the fuel service charge, they would not have rented their vehicles from Defendants, would have selected a different fuel service plan, or would have paid less for the rental vehicles.

94.    Defendants' general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

95.    As a direct and proximate result of Defendants' actions described above, Plaintiff Veach and the Washington Subclass members have been injured in fact and suffered damages, and seek relief in the form of actual damages, treble damages, and reasonable attorneys' fees, pursuant to Wash. Rev. Code § 19.86.090.

## THIRD CAUSE OF ACTION
### BREACH OF CONTRACT
**(On Behalf of the Nationwide Class Or, Alternatively, the State Subclasses)**

96.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

97.    Plaintiffs and the Class entered into contracts to rent a vehicle from Defendants.

98.    The contracts provided that Plaintiffs and the Class would pay Defendants a specified rate to rent a vehicle. The contracts further provided that should Plaintiffs and the Class enroll in the Self-Service fuel option and fill the fuel tank before returning the rental vehicle, that Plaintiffs and the Class would not be charged a fuel service charge.

99.    Plaintiffs and the Class performed their obligations under the contract.

100.    Defendants breached their contracts with Plaintiffs and the Class by imposing fuel service charges upon those who enrolled in the Self-Service fuel option and filled up the vehicle's fuel tank before returning the vehicle to Defendants.

101.    As a direct and proximate result of Defendants' breaches, Plaintiffs and the Class have been deprived of the benefit of their bargain and have suffered economic losses.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of the Nationwide Class Or, Alternatively, the State Subclasses)**

102.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

103.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants.

104.    Defendants had or undertook a duty to disclose the fuel service plans truthfully and accurately.

105.    Defendants had a duty to exercise reasonable care in making representations and/or statements concerning the fuel service charges and the process by which they are imposed.

106.    Defendants breached their duty and failed to exercise reasonable care when they misrepresented the true nature of the fuel service charges. Specifically, Defendants misrepresented and failed to disclose to Plaintiffs and the Class that they would not incur fuel service charges if their rental vehicles were returned with a full tank of fuel, despite Defendants' statements to the contrary.

107.    Defendants knew or should have known that their statements and/or omissions alleged herein were materially false and/or misleading.

108.    Defendants' misrepresentations were material in that Plaintiffs and the Class believed the misrepresentations to be important in making their decision to rent vehicles from Defendants and which fuel service plan to select.

109.    Defendants knew or should have known that their misrepresentations would induce

Plaintiffs and the Class to rent vehicles from Defendants and pay to fill the rental vehicles with fuel before returning them to Defendants.

110.    But for Defendants' misrepresentations, Plaintiffs and the Class would not have rented vehicles from Defendants or would have paid substantially less to do so.

111.    Plaintiffs and the Class reasonably relied on Defendants' misrepresentations and, as a direct and proximate result of Defendants' conduct, Plaintiffs and the Class suffered damages.

**FIFTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(On Behalf of the Nationwide Class Or, Alternatively, the State Subclasses)**

112.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

113.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants.

114.    Defendants made materially misleading statements and omissions concerning a presently existing or past fact. Defendants misrepresented and failed to disclose to Plaintiff and the Class that they would not incur fuel service charges if their rental vehicles were turned with a full tank of fuel. As a result, Plaintiff and the Class were fraudulently induced to rent a vehicle from Defendants.

115.    These statements were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class rely on them.

116.    But for Defendants' misrepresentations, Plaintiffs and the Class would not have rented vehicles from Defendants or would have paid substantially less to do so.

117.    Plaintiffs and the Class reasonably relied on these statements and, as a direct and proximate result of Defendants' conduct, Plaintiffs and the Class suffered damages.

## SIXTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class Or, Alternatively, the State Subclasses)**

118.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

119.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants.

120.    This claim is brought in the alternative to Plaintiffs' contract-based claims.

121.    Plaintiffs and members of the Class conferred a benefit on Defendants by paying a fuel service charge despite returning their rental vehicles with full tanks of fuel.

122.    Defendants had knowledge that this benefit was conferred upon them.

123.    Defendants have been and continue to be unjustly enriched at the expense of Plaintiffs and the Class, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.    grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to correct their advertising and marketing practices as described herein;

F.    award reasonable attorney's fees and costs; and

G.    grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.


Dated: April 17, 2024

Respectfully submitted,

*/s/ Matthew D. Schelkopf*
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
Juliette T. Mogenson
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: 610-421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com
jtm@sstriallawyers.com

*Attorneys for Plaintiffs and the putative Class*